UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALEJANDRO LOPEZ,<br><br>　　　　Defendant. | No. 1:18-cr-00260-DAD-BAM<br><br>ORDER DENYING DEFENDANT ALEJANDRO LOPEZ'S MOTIONS FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A) AND FOR REDUCTION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(2)<br><br>(Doc. Nos. 65, 74, 85) |

On October 28, 2022, defendant Alejandro Lopez filed a *pro se* motion seeking his compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), which he updated on April 25, 2024. (Doc. Nos. 65, 85.) Thereafter, on November 3, 2023, defendant Lopez filed a *pro se* motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) based on Amendment 821 to the U.S. Sentencing Guidelines. (Doc. No. 74.) Below, the court will separately address each motion and, for the reasons explained, will deny both.

**MOTION FOR COMPASSIONATE RELEASE**

**I.　　Background**

On August 23, 2021, defendant Lopez was sentenced to the custody of the U.S. Bureau of Prisons ("BOP") for a term of 90 months with a 36-month term of supervised release to follow (to become unsupervised if deported) after pleading guilty to possession with the intent to distribute at least 50 grams of actual methamphetamine or 500 grams of a mixture or substance containing a

1   detectable amount of methamphetamine in violation of 18 U.S.C. § 841(a)(1).  (Doc. Nos. 39, 40,

2   63, 64.)¹  Defendant Lopez is currently in the custody of the BOP and is serving his sentence at

3   the Federal Correctional Institution II in Lompoc, California, with a projected release date of

4   April 13, 2025.  *See* Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/

5   (last visited August 12, 2024).

6         As noted, on October 28, 2022, defendant Lopez proceeding *pro se* filed a motion for

7   compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 66.)  After receiving an

8   extension of time to do so (Doc. No. 67), on December 8, 2022, the government filed its

9   opposition to that motion.  (Doc. No. 69.)  On January 9, 2024, Chief Judge Mueller of this court

10  issued an order referring defendant Lopez's motion for compassionate release to the Federal

11  Defender's Office ("FDO") for review and possible supplementation.  (Doc. No. 79.)  On March

12  8, 2024, the FDO filed a notice with the court reporting that it would not be supplementing

13  defendant Lopez's *pro se* motion for compassionate release.  (Doc. No. 83.)  On April 15, 2024,

14  this case was reassigned to the undersigned.  (Doc. No. 84.)  On April 25, 2024, defendant Lopez

15  filed a *pro se* "informational motion" advising the court that his anticipated release date had been

16  extended to the April 13, 2025 date.  Thereafter, on June 5, 2024, the undersigned again referred

17  the motion to the FDO in light of the defendant's filing advising of the pushing back of his

18  anticipated release date.  On June 20, 2024, the FDO filed a supplemental brief in support of

19  defendant's motion.  (Doc. No. 87.)  On July 12, 2024, the government filed its supplemental

20  opposition.  (Doc. No. 96.)  Finally, on August 2, 2024, the FDO filed a reply brief in support of

21  defendant Lopez's motion for compassionate release.  (Doc. No. 100.)

22  **II.**     **Legal Standard**

23        A court generally "may not modify a term of imprisonment once it has been imposed."  18

24  U.S.C. § 3582(c).  However, a court is authorized to modify an imposed term of imprisonment in

---

¹ The sentence imposed was substantially below the advisory sentencing guideline range as calculated by the probation officer in the presentence report and adopted by the court as true and correct at the time of sentencing.  *See* fn. 4, below.  By way of variance, the 90-month term of imprisonment imposed by the court was also well below the 120-month term recommended in the presentence report.  (Doc. No. 52 at 14; *see also* Doc. No. 87 at 1–2.)

response to a motion for compassionate release brought pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. *See United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021). In relevant part, that statute provides that the court may

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). To grant compassionate release under this statute, a district court must conclude that the moving defendant satisfies all three predicates required by that provision. *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022). As the Ninth Circuit has explained:

> First, the district court must determine whether "extraordinary and compelling reasons warrant" a sentence reduction. Second, the court must evaluate whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." Third, the court must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted "under the particular circumstances of the case."

*Id.* (internal citations omitted). "Although a district court must perform this sequential inquiry before it grants compassionate release, a district court that properly denies compassionate release need not evaluate each step." *Keller*, 2 F.4th at 1284.

The applicable policy statement for compassionate release in the United States Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13. "Section 1B1.13 provides that extraordinary and compelling reasons for a reduction in sentence exist under any of six enumerated circumstances, or a combination thereof, relating to: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) family circumstances of the defendant; (4) the

defendant being a victim of abuse while in custody; (5) other reasons of similar gravity; and (6) an unusually long sentence." *United States v. Ramirez-Suarez*, No. 16-cr-00124-BLF, 2024 WL 1485859, at *4 (N.D. Cal. Apr. 5, 2024) (citing U.S.S.G. § 1B1.13).

Regardless of which category of extraordinary and compelling reasons exist, in order to grant relief requested under 18 U.S.C. § 3582(c)(1)(A), the court must also determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and that "the reduction is consistent with" the § 1B1.13 policy statement. U.S.S.G. § 1B1.13(a)(2), (3).

Finally, it is important to note that the defendant bears the burden to establish their "eligibility for compassionate release." *Wright*, 46 F.4th at 951.

**III. Analysis**

  A. Administrative Exhaustion

Here, it is undisputed that defendant has exhausted his administrative remedies prior to seeking relief from this court pursuant to § 3582. (Doc. Nos. 65 at 3; 69 at 3.) Accordingly, the court will turn to the merits of the motion.

  B. Extraordinary and Compelling Reasons

Defendant's *pro se* motion focused primarily on the elevated risk of death or serious illness he faces were he to contract COVID-19 due to his medical conditions (diabetes, hypertension, hypoestesia, hyperlipedemia, high cholesterol and a Body Mass Index of 30) and the conditions of his confinement. (Doc. No. 65 at 2, 4–9.) Thus, defendant essentially argues that extraordinary and compelling reasons exist based on his medical circumstances. For the category of the defendant's medical circumstances, § 1B1.13 outlines the following four circumstances:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—

4

       (i)     suffering from a serious physical or medical condition,

       (ii)    suffering from a serious functional or cognitive impairment, or

       (iii)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

      (C)    The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

      (D)    The defendant presents the following circumstances—

       (i)     the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

       (ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

       (iii)   such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).

     Of these enumerated circumstances, the first circumstance does not apply here because defendant Lopez does not assert that he is suffering from a terminal illness. Similarly, the third circumstance does not apply because defendant does not assert that the medical conditions that he suffers from require "long-term or specialized medical care that is not being provided." U.S.S.G. § 1B1.13(b)(1)(C). Rather, defendant contends that the fact that he suffers from the listed medical conditions, coupled with his incarceration at FCI Lompoc, places him at a higher risk of death or serious illness from COVID-19. (Doc. No. 65 at 4–8.) Thus, based on defendant's contention, his motion can arguably be construed as seeking to establish that he satisfies the second and/or fourth circumstances enumerated in § 1B1.13(b)(1).

     The court finds that defendant Lopez has not established that the second enumerated circumstance exists here either because, even assuming that he suffers from serious medical

conditions, which the government does not dispute, he has not shown that his medical conditions "substantially diminish" his ability "to provide self-care within the environment of a correctional facility and from which he [] is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B).

First, defendant's medical conditions are being treated by the prison medical staff at FCI Lompoc. (Doc. No. 99-1.) As the undersigned has recognized, "[c]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (internal quotation marks and citation omitted); *see also United States v. Esparza*, No. 1:15-cr-00319-JLT-SKO, 2024 WL 216558, at *2 (E.D. Cal. Jan. 19, 2024) ("Diagnoses for chronic conditions that are treatable by the BOP do not establish extraordinary and compelling reasons that merit compassionate release, even in light of the COVID-19 pandemic."); *United States v. Cook*, No. 21-cr-01350-GPC, 2024 WL 1268163, at *3 (S.D. Cal. Mar. 25, 2024) (denying a motion for compassionate release because the defendant "has not submitted evidence that supports his allegations of FCI Phoenix's medical treatment of prisoners, such as proof that he has been denied access to his inhaler or prescribed medications, and there is no evidence that his health has deteriorated from the alleged inadequate medical treatment"). Here, defendant Lopez does not advance any arguments or offer any evidence to show that his medical conditions have substantially diminished his ability to provide self-care. Most importantly, defendant has not come forward with any evidence that the current surge of COVID-19 in the state has had a serious impact upon him or his conditions of confinement.

Finally, in the FDO's supplementation and reply in support of the pending motion for compassionate release the focus of defendant's argument shifts somewhat. In those briefs it is argued that although defendant Lopez has received subsequent COVID-19 vaccinations while in BOP custody, those vaccinations have not remained up to date since the latest one was administered in December of 2022. (Doc. Nos. 87 at 4–5; 100 at 3.) However, the FDO primarily focuses upon the purported unfairness of defendant Lopez's anticipated release date being pushed back by one-year after he cooperated with immigration authorities, resulting in the issuance of a final removal order which in turn resulted in the BOP revoking his previously

earned time credits thereby delaying his release date.  (Doc. Nos. 87 at 7; 100 at 3.)  The government effectively does not respond to the FDO's arguments in this regard, instead repeating its contentions that defendant Lopez has failed to carry his burden of showing that extraordinary and compelling circumstances justify the granting of the requested relief and that the below-guideline 90-month term of imprisonment imposed was fair and reasonable, as well as necessary and warranted, under the circumstances of this case.  (Doc. No. 96 at 2–6.)

        The court wishes to make a few observations.  The first relates to defendant's reliance on the risk posed by COVID-19 to him at his place of confinement in light of his medical conditions.  The court very much disagrees with the government's statement in its July 12, 2024 supplemental opposition that "the COVID-19 pandemic is largely over" (Doc. No. 96 at 96).  The test positivity percentage in California for the virus is, as of August 16, 2024, 14.7% as reported by the California Department of Public Health.  *See* https://www.cdph.ca.gov/Programs/CID/DCDC /Pages/ Respiratory-Viruses/RespiratoryDashboard.aspx.  According to California protocols anything over an 8% test positivity rate qualifies as "widespread" infection – the highest possible tier.  The 14.7 % test positivity is the highest the state has experienced over approximately the past year.  The court also notes that the BOP has apparently not kept defendant Lopez's vaccine status current since, according to defendant, the last of the three vaccinations he received was administered in December 2022.  If so, this is not effective preventative care since it is widely recognized that COVID-19 vaccines begin to lose their efficacy within 4 to 6 months of administration.  Nonetheless, defendant Lopez has not presented evidence of alarming rates of test positivity or, for instance, increased hospitalization of prisoners at his place of confinement.  Moreover, it is now also widely recognized that vaccination as well as effective treatments have very significantly reduced the number of individuals who become severely ill and require hospitalization after contracting COVID-19.

        For these reasons, the court concludes that defendant Lopez has not met his burden of demonstrating that extraordinary and compelling reasons exist that warrant his compassionate release under § 3582(c)(1)(A) based upon the risks to him associated with COVID-19 at his place of confinement.

Second, as to the FDO's recently advanced focus of the pushing back of defendant Lopez's anticipated release date by a year due to the issuance of a final order of removal by immigration authorities, the court concludes that this does not provide a basis for the granting of compassionate release. The undersigned certainly understands defendant's argument that it is arguably unfair to punish him by withdrawing time credits and moving back his anticipated release date, in essence, because he cooperated with immigration authorities to allow for the earlier issuance of a final order of removal. (Doc. No. 100 at 3.) As defendant acknowledges (*id*. at 4), however, that is indeed the law. *See* 18 U.S.C. § 3632 (E)(i) ("A prisoner is ineligible to apply time credits . . . if the prisoner is the subject of a final order of removal under any provision of the immigration laws[.]"). It is for Congress and not the courts to address any purported unfairness resulting from the application of this statutory provision. Accordingly, the pushing back of defendant's anticipated release date on this basis does not present an extraordinary and compelling reason warranting defendant's compassionate release under § 3582(c)(1)(A).

Having determined that defendant Lopez has not established extraordinary and compelling reasons, the court need not address the parties' arguments with regard to the sentencing factors set forth in 18 U.S.C. § 3553(a) and whether defendant poses a danger to the public safety. *See Keller*, 2 F.4th at 1284. Because the court finds defendant Lopez's showing is insufficient under 18 U.S.C. § 3582(c)(1)(A), his motion for compassionate release (Doc. Nos. 65, 85) will be denied.

## MOTION FOR A REDUCTION OF SENTENCE[2]

As noted, on November 3, 2023, defendant Lopez filed a *pro se* motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) based on Amendment 821 to the U.S. Sentencing Guidelines. (Doc. No. 74.) On January 30, 2024, the government filed an opposition to that motion. (Doc. No. 82.) Defendant did not file a reply.[3] Because defendant Lopez is not eligible

---

[2] On January 9, 2024, the motion was referred to the FDO for possible assumption of representation. (Doc. No. 80.) The FDO did not file a notice indicating its intent to assume representation within the time provided by the order and thus the time for the filing of an opposition by the government commenced running. (*Id*.)

[3] As noted, on April 15, 2024, this case was reassigned to the undersigned. (Doc. No. 84.)

for the relief he seeks pursuant to § 3582(c)(2), the court will deny the motion to reduce his sentence.

### I. Background

Defendant's entry of plea to his offense of conviction has already been described above. The presentence report ("PSR") prepared in defendant's case calculated his total offense level as 33 and his criminal history category as I (based on a finding of a criminal history score of 0), resulting in an advisory sentencing guidelines range calling for a term of imprisonment between 135 and 168 months.  (Doc. No. 43 at 7, 14.)  At the sentencing hearing on August 23, 2021, the court adopted those findings as true and correct.[4]  However, based upon the court's consideration of several relevant factors under 18 U.S.C. § 3553(a), as indicated in the Statement of Reasons, and based upon defendant Lopez's eligibility for safety valve relief already taken into account in its guideline calculation, the court varied downward from the advisory guideline range and below the otherwise applicable mandatory minimum sentence in imposing the 90-month term of imprisonment.

Defendant Lopez contends that he is eligible for a sentence reduction based on Part B of Amendment 821 and U.S.S.G. § 4C1.1(a).  (Doc. No. 74.)  That new provision reduced the advisory sentencing guideline range for those who had no criminal history points—so-called zero-point offenders.

For the reasons explained below, the court concludes that defendant is not eligible for relief under § 3582(c)(2), and his motion for a reduction of the sentence imposed will therefore be denied.

/////

/////

---

[4] There is no transcript of the sentencing hearing in defendant Lopez's case.  The government in opposing the pending motion has cited to the court's Statement of Reasons in various instances. (Doc. No. 82 at 2, 4.)  The court's Statement of Reasons is marked "Not for Public Disclosure" and therefore does not appear on the docket in this action.  However, the court has obtained the Statement of Reasons in this case and confirmed the accuracy of the information set forth in this order with respect to the advisory sentencing guideline determination and the basis of the sentence ultimately imposed by the court.

**II.     Analysis**

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021) (quoting *Dillon v. United States*, 560 U.S. 817, 819 (2010)); *see also* 18 U.S.C. § 3582(c); *United States v. Tadio*, 663 F.3d 1042, 1046 (9th Cir. 2011); *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999) ("[D]istrict courts do not have 'inherent authority' to reconsider sentencing orders."). "But this general rule is subject to several exceptions." *Keller*, 2 F.4th at 1281. One of those exceptions is found in 18 U.S.C. § 3582(c)(2), which provides:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

District courts are to engage in a "two-step inquiry" in determining whether a sentence reduction is appropriate under 18 U.S.C. § 3582(c)(2). *United States v. Brito*, 868 F.3d 875, 879 (9th Cir. 2017) (citing *Dillon*, 560 U.S. at 826). "First, a district court must determine whether a prisoner is eligible for a sentence reduction under the Commission's policy statement in § 1B1.10." *Id.* (citing *Dillon*, 560 U.S. at 827). "Second, a district court must 'consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.'" *Id.* (quoting *Dillon*, 560 U.S. at 827). The Ninth Circuit has "called these steps the 'eligibility prong' and the 'discretionary prong.'" *Id.* (quoting *United States v. Dunn*, 728 F.3d 1151, 1157 (9th Cir. 2013)).

/////
/////
/////
/////

10

As noted above, defendant Lopez asserts that he is eligible for a reduction to his sentence based on Part B of Amendment 821. (Doc. No. 74.)[5] However, he erroneously contends that his offense level was determined by the court to be 29 and that a two-level reduction would result in an offense level of 27, which with a criminal history category of I would result in a guideline range calling for a term of imprisonment of between 70 and 87 months. (*Id*. at 1–2.) Based upon this calculation defendant Lopez seeks to have his sentence reduced to a 70-month term of imprisonment. (*Id*. at 7.)

The government agrees that defendant Lopez is a zero-point offender but notes that the court in fact determined his offense level to be 33 at the time of his sentencing. (Doc. No. 82. at 1–2, 4.) According to the government, a two-point reduction in defendant's offense level for being a zero-point offender would then result in an offense level of 31 and an advisory sentencing guideline range of between 108 and 135 months.[6] (*Id.*) The government therefore contends that because defendant Lopez was sentenced below the bottom of guideline range that results from the two-point offense level reduction for being a zero-point offender, he is not entitled to relief under U.S.S.G. § 1B1.10(b)(2)(A) and 18 U.S.C. § 3582(c)(2). (Doc. No. 82 at 4.)

The government's argument in this regard is entirely persuasive. As one district court recently explained under similar circumstances:

> [A] court cannot "reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range" that would have been applicable if a new guideline were effective at the time of sentencing. U.S.S.G. § 1B1.10(b)(2)(A). Assuming Defendant could receive a zero-point offender adjustment, the amended guideline range for imprisonment based on a total

---

[5] Although defendant does not seek a reduction in his sentence pursuant to Part A of Amendment 821 (*see* Doc. No. 77 at 1), it is clear that he is ineligible for relief under that provision as well. Part A of Amendment 821 decreases the number of "status points" received under U.S.S.G. § 4A1.1 by individuals who commit their offense while under a criminal justice sentence. However, defendant's PSR does not reflect that he was under any criminal justice sentence when he committed the offenses for which he was sentenced by this court and he did not receive any status points. (Doc. No. 52 at 7.) Accordingly, defendant is also ineligible for an adjustment to his sentence under U.S.S.G. § 4A1.1(e).

[6] The court has confirmed that the government is correct as to the court's guideline calculation in sentencing defendant Lopez and the fact that the 90-month sentence was reached by way of variance upon consideration of the § 3553(a) factors. *See* fns. 1 & 4, above.

11

> offense level of 27 and criminal history category of I would be 70–87 months. That range exceeds the 60-month sentence the Court imposed, so a further reduction is prohibited.

*United States v. Berkett*, No. 2:21-cr-00292-MCS-1, 2024 WL 1516317, at *2 (C.D. Cal. Apr. 8, 2024); *see also United States v. Pacheco*, No. 17-cr-00324-BLF-3, 2024 WL 2304574, at *2 (N.D. Cal. May 20, 2024) ("Defendant already received a sentence of 140 months, which is below the low end of the amended guideline range. In this circumstance, no relief is permissible under Part A.") (citing § 1B1.10(b)(2)(A) and *Dillon*, 560 U.S. at 827).

Because defendant Lopez is ineligible for a modification of his sentence based on Amendment 821, the court need not proceed to the second step of the § 3582(c)(2) analysis to consider again the § 3553(a) sentencing factors. *Dillon*, 560 U.S. at 826–27. The pending motion for a sentence reduction will therefore be denied.

## CONCLUSION

For the reasons explained above, the court denies defendant Lopez's motions for compassionate release § 3582(c)(1)(A) (Doc. Nos. 65, 85) and for a reduction of his sentence pursuant to § 3582(c)(2) (Doc. No. 74). The Clerk of the Court is directed to close this case once again.

IT IS SO ORDERED.

Dated:   **August 16, 2024**                 _____
                                              DALE A. DROZD
                                              UNITED STATES DISTRICT JUDGE